IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GERALD E. CHARLES D/B/A § | | |
| CHARLES CONSTRUCTION COMPANY § | | PLAINTIFF |
| § | | |
| v. § | | Civil Action No. 1:06CV556-LG-RHW |
| § | | |
| NASSER AL-ANSSI, INDIVIDUALLY § | | |
| AND IN HIS OFFICIAL CAPACITY, § | | |
| NASSER HEAVY EQUIPMENT, INC. § | | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART THE DEFENDANTS' MOTION TO DISMISS**

THIS MATTER COMES BEFORE THE COURT on the Motion to Dismiss [5] filed by the defendants, Nasser Al-Anssi and Nasser Heavy Equipment, Inc. After due consideration of the submissions and the relevant law, it is the opinion of the Court that the defendants' Motion to Dismiss should be denied as to the defendant, Nasser Heavy Equipment, and granted as to the defendant, Nasser Al-Anssi.

**FACTS AND PROCEDURAL HISTORY:**

In 2005, the plaintiff, Gerald E. Charles d/b/a Charles Construction Company ("Charles"), approached Jim Owings, a salesman at Mid-South Machinery, Inc. in Gulfport, Mississippi, concerning his desire to purchase a Model R160 Hyundai Excavator. Owings informed Charles that there was no such excavator on site, but that he would order the equipment from Nasser Heavy Equipment, Inc. ("Nasser Equipment") in Georgia. (Plaintiff's Mem. Br. at 2). Owings traveled to Nasser Equipment in October of 2005 and obtained a Credit Application and Customer Order form, which were later filled out by the plaintiff, Charles. (Ex. C and D to Defendants' Motion). On January 13, 2006, Charles entered a Security Agreement with Nasser Equipment to purchase the excavator for $95,000, and paid a $10,000 deposit with a check made

payable to Nasser Equipment and Jim Owings. (Ex. E and F to Defendants' Motion). Nasser Equipment alleges that Owings inspected the excavator on behalf of Charles and noted on a Delivery and Acceptance of Collateral form that he had inspected the excavator on January 20, 2006, and found it to be in a satisfactory condition. (Ex. G to Defendants' Motion). However, Charles alleges that Owings made this notation after the document was signed by Charles. Nasser Equipment shipped the excavator to Charles by common carrier. Charles rejected the excavator, claiming that it was in a defective condition, and the excavator was returned to Nasser Equipment.

Charles has sued Nasser Equipment and Nasser Al-Anssi, individually and in his official capacity, asserting claims of breach of contract, fraud, and deceit. The defendant, Nasser Al-Anssi "Al-Anssi," is the Chief Executive Officer of Nasser Equipment. Charles seeks a refund of his deposit, punitive damages, and attorney's fees.

The parties disagree as to whether Owings was acting as an agent of Charles or as an agent of Nasser Equipment during this transaction. Jim Owings was paid a $6000 commission by one of the parties. Nasser Equipment asserts that the commission was agreed upon between Owings and Charles. (Ex. A to Defendants' Motion). However, Charles claims that he had no knowledge that Owings would receive a commission for the sale. (Plaintiff's Mem. Br. at 2). Charles alleges that he had previously purchased another excavator from Nasser Equipment through Owings in 2005, and claims that Owings held himself out as an agent of Nasser Equipment. (Ex. A to Plaintiff's Mem. Br.). Meanwhile, Nasser Equipment alleges Owings was at all times acting on behalf of Charles. Nasser Equipment and Al-Anssi have filed a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(2), alleging that Nasser Equipment is a Georgia

corporation that does not conduct business in Mississippi, and has never had any contact with Mississippi aside from shipping the excavator to Charles via common carrier. The defendants further assert that all paperwork and payments were hand-delivered to Nasser Equipment in Georgia by Owings. The defendant, Nasser Al-Anssi, asserts that he has never had any contact with the State of Mississippi of any kind.

## LAW AND ANALYSIS:

### I. LEGAL STANDARDS FOR THE EXERCISE OF PERSONAL JURISDICTION:

When a district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff must only make a *prima facie* case that jurisdiction is proper. *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002). In determining whether a *prima facie* case for personal jurisdiction exists, a Court must accept the uncontroverted allegations in the plaintiff's complaint as true, and all factual conflicts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

A federal court sitting in diversity may exercise personal jurisdiction only to the extent allowed a state court under applicable state law. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). "A state court or a federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Allred*, 117 F.3d at 281 (*quoting Cycles, Ltd. v. W. J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)).

### II. DUE PROCESS:

In order for the exercise of personal jurisdiction to comport with due process, the non-

resident must have "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with that forum state," and the exercise of personal jurisdiction "must not 'offend traditional notions of fair play and substantial justice.'" *Allred v. Moore & Peterson*, 117 F.3d 278, 285-86 (5th Cir. 1997)(quoting *Felch v. Transportes Lar-Mex, Sa De CV*, 92 F.3d 320, 323 (5th Cir. 1996)).

  A.  The Minimum Contacts Prong of Due Process:

  The "minimum contacts" prong of the due process inquiry requires a determination of whether the non-resident's contacts with the state give rise to specific jurisdiction or general jurisdiction. *Allred*, 117 F.3d at 286 (citing *Wilson v. Belin*, 20 F.3d 664, 647 (5th Cir. 1994)). Specific jurisdiction arises when the non-resident defendant's contacts with the forum state "arise from, or are directly related to, the cause of action." *Id.* at 286 (quoting *Wilson*, 20 F.3d at 647). General jurisdiction is proper if the defendant's contacts with the forum state are both "continuous and systematic" regardless of whether the defendant's contacts with the forum state are directly related to the cause of action. *Id.* at 286.

  In support of his argument that personal jurisdiction exists in this matter, Charles relies upon his assertion that Owings, a Mississippi resident, was acting as an agent of Nasser Equipment throughout the transaction at issue, as well as during two previous transactions between Nasser Equipment and Charles. Nasser Equipment counters that Owings was acting either as an agent of Charles or as an agent of neither party, and that there were no previous transactions between Nasser Equipment and Charles.

  The plaintiff must set forth a *prima facie* case that jurisdiction is proper. *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002). Uncontroverted

allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  Therefore, it must be determined whether Charles has set forth a *prima facie* case that Owings was acting as an agent of Nasser Equipment when all factual disputes are resolved in favor of Charles.  *See Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 869 (5th Cir. 2000).

Under Mississippi law, an agency relationship may be either express or *de facto*. *Stripling*, 234 F.3d at 870.  A *de facto* agency may be proven by the presence of three elements: (1) "[m]anifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal;" (2) "[t]he agent's acceptance of the arrangement," and (3) "[t]he parties understood that the principal will control the undertaking."  *Id.* at 870.  The question of whether an agency relationship exists is a question of fact, and can be determined by the relations of the parties as they exist under their agreements or acts.  *Id.*  In support of his agency argument, Charles relies on the following alleged facts: 1) that Owings received a commission from Nasser Equipment; 2) that Owings was able to convert Charles' deposit that was made payable to Owings and Nasser Equipment to a cashier's check; and 3) that Owings had facilitated two other transactions with Nasser Equipment and held himself out as an agent of Nasser Equipment during each of those transactions.  Although Nasser Equipment disputes these allegations, all factual disputes must be resolved in favor of Charles.  The payment of a commission to Owings by Nasser Equipment as well as the involvement of Owings in at least two other transactions between Charles and Nasser Equipment are sufficient to create a *prima*

*facie* case that Owings was acting as Nasser Equipment's agent. Since Nasser Equipment's contact with Owings is related to the cause of action at issue, the Court finds that specific jurisdiction exists.

      B. The Fairness Prong of Due Process:

In addition to finding minimum contacts between the non-resident defendant and the forum state, a Court must find that the exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." The following should be considered: (1) the burden upon the non-resident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) the shared interest of the several States in furthering fundamental substantive social policies." *Allred*, 117 F.3d at 286 n.7 (quoting *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990)).

In the present matter, Charles alleges that he was sold a defective excavator due to the fraudulent conduct of Owings and/or Nasser Equipment. Therefore, he has a strong interest in obtaining effective and convenient relief. The State of Mississippi also has an interest in adjudicating a dispute that involves the sale of a product to a Mississippi resident. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993). Additionally, although the Court acknowledges that there is no evidence that Nasser Equipment placed this excavator in the stream of commerce, it is not unfair to require a seller that knowingly shipped a product to Mississippi to defend a Mississippi lawsuit arising out of alleged defects in the product. *See Bullion*, 895 F.2d at 217; *Ruston*, 9 F.3d at 421. Furthermore, as previously set forth, Charles has set forth a *prima facie* case that a Mississippi resident, Owings, facilitated this sale, and acted as

an agent of Nasser Equipment, such that Nasser Equipment could have reasonably anticipated being haled into Mississippi court should the excavator be defective. *See Stripling*, 234 F.3d at 872.

## II. MISSISSIPPI'S LONG-ARM STATUTE:

Mississippi's long-arm statute provides:

> Any nonresident . . . corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57.  The long-arm statute therefore consists of three prongs: the contract prong, the tort prong, and the doing business prong.  Charles asserts that personal jurisdiction exists in this matter pursuant to all three prongs due to the actions of Owings, a Mississippi resident.  This Court finds that jurisdiction is proper pursuant to either the doing business prong or the contract prong of the long-arm statute.

### A.  The Contract Prong of the Long-Arm Statute:

A non-resident is subject to personal jurisdiction in Mississippi pursuant to the contract prong if it enters into a contract with a Mississippi resident that is to be at least partially performed in Mississippi.  MISS. CODE ANN. § 13-3-57.  The contract between Nasser Equipment and Charles required Nasser Equipment to deliver the excavator to Charles' Mississippi address. The contract also required Charles to make monthly payments for the equipment from Mississippi.   Therefore, the Court finds that the contract was to be partially performed in

Mississippi.

### B. The Doing Business Prong of the Long-Arm Statute:

A non-resident is subject to jurisdiction under the doing business prong if it is conducting any type of business in Mississippi. *Walker v. World Ins. Co.*, 289 F. Supp. 2d 786, 788 (S.D. Miss. 2003). The requirements for exercise of jurisdiction pursuant to the doing business prong are: (1) the non-resident must purposefully do some act or consummate a transaction in Mississippi; and (2) the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice.[1] *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773 (S.D. Miss. 2001)(*citing Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 877 (Miss. 1995)). This Court has already determined that the assumption of jurisdiction over Nasser Equipment would not offend traditional notions of fair play and substantial justice. Therefore, it is only necessary to determine whether Nasser Equipment purposefully did some act or consummated a transaction in Mississippi.

Charles has set forth a *prima facie* case that Owings, a Mississippi resident, was acting as an agent of Nasser Equipment throughout this transaction. Charles also asserts that Owings facilitated at least two other transactions between Nasser Equipment and Charles for the purchase of equipment, and these assertions must be accepted as truthful. Therefore, Nasser Equipment, by and though Owings, was doing business in the State of Mississippi at the time of the sale of the excavator.

---

[1] An additional requirement– a connection between the act or transaction that occurred in Mississippi and the claims asserted in the lawsuit– was abolished in 1991 by the Mississippi Legislature. *Gross*, 655 So. 2d at 877.

 IV.  NASSER AL-ANSSI:

Charles has also sued the Chief Executive Officer of Nasser Equipment, Nasser Al-Anssi. Jurisdiction over individual officers and employees of a corporation cannot be predicated merely upon the jurisdiction over the corporation itself.  *Webb v. Culbertson, Heller & Norton, Inc.,* 357 F.Supp. at 925.  "Some independent, individualized contacts must exist between the non-resident defendants and the forum."  *Cole v. Alton*, 567 F.Supp. 1081, 1083 (N.D. Miss. 1983).  Charles has not set forth any independent, individualized contacts between Al-Anssi, a Georgia resident, and the State of Mississippi.  Therefore, this Court cannot exercise personal jurisdiction over Al-Anssi.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion to Dismiss filed by Nasser Al-Anssi and Nasser Heavy Equipment, Inc.[128] is **DENIED** as to the defendant, Nasser Heavy Equipment, Inc. and **GRANTED** as to the defendant, Nasser Al-Anssi**.**  The plaintiff's claims against Nasser Al-Anssi are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 19th day of March, 2007.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE