IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GERALD E. CHARLES, d/b/a CHARLES CONSTRUCTION COMPANY § § § | | PLAINTIFF |
| VS. § | | NO. 1:06cv556-LG-JMR |
| § | | |
| NASSER HEAVY EQUIPMENT, INC. § | | DEFENDANT |

**MEMORANDUM OPINION AND ORDER**
**DENYIING MOTION TO STRIKE JURY DEMAND**

BEFORE THE COURT is Defendant Nasser Heavy Equipment, Inc.'s [24] Motion to Strike Jury Demand. Plaintiff Gerald E. Charles, d/b/a Charles Construction Company initiated this action for breach of contract and fraud arising from the sale of an excavator. Nasser argues that the contract precludes a jury trial in this case. The Court has considered the parties' submissions, the record, and the relevant legal authority. The motion is denied.

**FACTS AND PROCEDURAL HISTORY**

The Court incorporates by reference the facts and procedural history set forth in its Memorandum Opinion and Order Granting in Part and Denying in Part the Defendants' Motion to Dismiss [19] and Memorandum Opinion and Order Granting in Part and Denying in Part Summary Judgment [47]. Additional relevant facts are that Charles and Nasser executed a Customer Order and separate Security Agreement relevant to the sale of an excavator on December 29, 2005. The Customer Order indicated the excavator would be delivered January 5, 2006. Charles needed the excavator in order to perform a subcontracting job for Hurricane Katrina debris removal, beginning in January, 2006. Paragraph 7.5 of the Security Agreement states:

> **Waiver of Trial By Jury.** Seller and Buyer hereby waive any right to trial by jury in any action relating to this Agreement. Seller and Buyer hereby, for themselves, their successors and assigns, WAIVE ANY RIGHT TO SUE FOR OR COLLECT FROM THE OTHER PARTY ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER AS A RESULT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR THE ENFORCEMENT BY EITHER PARTY OF ITS RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT THAT ANY SUCH DAMAGES ARE PROVEN TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

(Def.'s Mot. Strike Jury Demand Ex. A at 5). Paragprah 7.5 appears in the same small, fine print as the rest of the agreement. Every paragraph in the agreement has a subheading typed in bold print. The jury clause appears under "**ASSIGNMENT AND GENERAL PROVISIONS**" and is not specially set off from the rest of the text. *Id.* Other subheadings in this section of the contract include "**7.1 Chattel Paper**," "**7.2 Assignment**," "**7.3 General**," and "**7.4 Additional Covenants and Oral Agreement**." *Id.* The Security Agreement identifies Nasser as "Seller" and Charles as "Buyer." *Id.* The Security Agreement, which is on a pre-printed Citicapital form, sets forth the financing terms of the sale and assigns the agreement to Citicapital. The Customer Order does not contain a jury waiver.

Charles brought this action for breach of the sale and for fraud. The Court granted summary judgment on the fraud claim, on August 13, 2008.

## DISCUSSION

Nasser argues that paragraph 7.5 of the Security Agreement prohibits a jury in this cause. Charles responds that the contractual waiver does not apply, because he seeks damages for gross negligence or willful misconduct. Additionally, Charles argues that the waiver was not valid,

because it is not clearly and unmistakably expressed.

The Court applies federal law to determine whether the jury trial waiver is valid. *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 812 (N.D. Tex. 2002). A party may contractually waive his right to a jury trial. *Westside-Marrero Jeep Eagle v. Chrysler Corp.*, 56 F. Supp. 2d 694, 706 (E.D. La. 1999). The waiver must be voluntary and knowing. *Id. See, Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007); *Med. Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 19 (1st Cir. 2002); *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed. Cir. 1990); *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988); *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832-33 (4th Cir. 1986); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985); *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977). *See also*, *Bakrac, Inc. v. Villager Franchise Sys.*, 164 Fed. Appx. 820, 823 (11th Cir. 2006). The factors the Court must consider in determining whether the wavier was knowing and voluntary are (1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; (4) whether the clause containing the waiver was inconspicuous; and (5) whether the opposing party was represented by counsel. *RDO*, 191 F. Supp. 2d at 813; *Westside-Marrero*, 56 F. Supp. 2d at 707. Because the right to a jury is fundamental, courts indulge every reasonable presumption against waiver. *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937); *RDO*, 191 F. Supp. 2d at 813. The party seeking the waiver has the burden of proof to establish that the waiver was knowing and voluntary. *Id.*

The Eastern District of Louisiana upheld a series of contractual jury waivers signed over

several days in *Westside-Marrero*. "In securing loans from [Defendant, Plaintiffs] signed several contracts that included clauses waiving their right to a jury trial." *Westside-Marrero*, 59 F. Supp. 2d at 704. In one contract, the jury provision was the only section in the entire contract that was written entirely in capital letters. *Id.* The court found, under the facts of the case, that the waiver provisions were negotiable. *Id.* at 707. Additionally, the court found the waiver provisions:

> were clearly written, in most instances in block print, just above the signature line. . . . [A]ll the plaintiffs had to do to recognize that they were waiving their right to a jury was to skim the paragraphs immediately above their signatures. The block print ensured that even a cursory glance at the documents would indicate that the section concerning the jury trial waiver was the most important section in the document.

*Id.* at 708. The plaintiffs were represented by counsel at the time they signed the contracts. *Id.* Although the court found "there was some inequality of bargaining power" between the plaintiffs (car dealers) and defendant (Chrysler Financial Corporation), it was not a "gross disparity in bargaining position." *Id.* at 709. In fact, the plaintiffs had successfully negotiated a decrease in the interest rate by presenting a competing offer from another financial institution. *Id.* Therefore, the court found that plaintiffs' jury trial waiver was knowing and voluntary. *Id.*

On the other hand, the *RDO* court found that the contractual jury waiver there was unenforceable. *RDO*, 191 F. Supp. 2d at 812. The court found the waiver was inconspicuous, because it was:

> printed in a very small font size making it difficult, if not impossible, for the average person to read it. The jury waiver is buried in the middle of a lengthy paragraph, not set off from the rest of the text through differential bold, larger print, italics, or any other form of emphasis or distinction.

*Id.* at 814. Additionally, the waiver was "wholly one-sided," which the court found indicated that it was not realistically negotiable. *Id.*

Likewise, the Second Circuit affirmed denial of a waiver provision where it "was set deeply and inconspicuously in the contract." *National Equipment*, 565 F.2d at 258. Specifically, "buried in the eleventh paragraph of a fine print, sixteen clause agreement . . . are the crucial words: 'Lessee hereby waives a trial by jury. . . .'" *Id.* "Moreover, it is clear that Hendrix did not have any choice but to accept the NER contract as written if he was to get badly needed funds." *Id.* Because of the inconspicuous waiver and the gross disparity of bargaining power, the court found that the wavier was not knowing or voluntary. *Id.*

In the instant case, Nasser does not argue that the waiver was knowing and voluntary. Rather, it relies on arbitration cases and argues only that the waiver was contained within the Security Agreement. The arbitration cases cited by Nasser are not on point. Agreements to arbitrate are construed with a presumption favoring arbitration, whereas jury waivers are construed with every reasonable presumption against them. *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78 (1998); *RDO*, 191 F. Supp. 2d at 813. Moreover, "[e]ven once it is determined that a contractual jury waiver clause does encompass the asserted claims, courts will not enforce the jury waiver unless it was entered into knowingly and voluntarily." *Medical Air*, 303 F.3d at 19.

The jury waiver at issue is the twenty-eighth out of thirty clauses. It is in small, fine print, that is the same as the majority of the text. Its heading, "Assignment and General Provisions," is in bold, all capital letters, and is in larger type than the subheading which indicates a jury waiver. The clause prior to the jury clause ("Additional Covenants and Oral Agreement") is mostly set forth in all capital letters. The jury provision is immediately preceded by a subheading in bold

print, "Waiver of Trial By Jury," but is followed immediately by a damages[1] waiver provision that is in all capital letters.  Following the damages provision is the anti-terrorism and money laundering provision that is entirely in bold, set off by black lines, headed in the largest print in the contract, and written in the second largest print.  It begins, "**IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH CITICAPITAL.**" In other words, the jury provision is set in small, regular type, and is sandwiched in between effectively larger print. Moreover, it is not set off by extra spaces, as is the "Assignment" clause. Unlike *Westside-Marrero*, there is nothing to set off the jury provision as the most important clause on the page, much less in the entire agreement.  No signature is required until approximately forty lines later, on the next page.  Thus,  the Court cannot conclude that the waiver language was conspicuously placed within the Security Agreement.

      The contract is a pre-printed form provided by Citicapital, not Nasser.  It is not clear whether "this Agreement" mentioned in paragraph 7.5 refers strictly to the loan or to the sale. There is no indication that either this original December sales agreement, or the October sale, between Nasser and Charles included a jury trial waiver.  There is no evidence that Charles, a sole proprietor, was represented by counsel at the signing of the agreement.  There is no evidence that the jury provision or the Security Agreement was negotiable or negotiated, or even if Nasser or salesperson Jim Owings was aware the jury provision was in the Security Agreement.  There is evidence in the record indicating that Charles was under time constraints to obtain the excavator from Nasser.  The Court finds that based on the record before it, Nasser has failed to establish

---

[1]Although the damages waiver is set forth under the same subheading, Nasser acknowledges it is a separate waiver from the jury trial waiver.

that Charles knowingly and voluntarily waived his right to a jury trial in this matter.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, the Defendant's [24] Motion to Strike Jury Demand is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 22nd day of August, 2008.

                                       s/ *Louis Guirola, Jr.*
                                       LOUIS GUIROLA, JR.
                                       UNITED STATES DISTRICT JUDGE